UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HRH DOOR CORP., f/k/a WAYNE-DALTON CORP., | ) ) | CASE NO. 1:13CV1989 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | OPINION AND ORDER |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #6) of Defendants, Travelers Property Casualty Company of America and The Travelers Indemnity Company ("Travelers"), to Dismiss in favor of arbitration, or, in the alternative, Dismiss the Sixth Cause of Action for failure to state a claim under Rule 12(b)(6), and the First, Second, Third, and Fourth Causes of Action pursuant to Rule 12(b)(7) for failure to join indispensable parties.  For the following reasons, the Motion is granted in part only.  The Complaint of Plaintiff, HRH Door Corp., f/k/a Wayne-Dalton Corp. ("Wayne-Dalton"), shall be arbitrated in accordance with the parties' agreement.  The remainder of the case is stayed pending the conclusion of the arbitration proceedings.  The alternative Motions to Dismiss, under

Fed.R.Civ.P. 12(b)(6) and 12(b)(7), are denied at this time.

## I. FACTUAL BACKGROUND

Wayne-Dalton was an Ohio corporation, formerly in the business of manufacturing and selling garage doors, garage door openers, and garage door accessories throughout the United States.  Beginning in the late 1990's, Wayne-Dalton entered into subcontract agreements for the installation of garage doors in housing developments in the state of California.  Many of the subcontract agreements contained a clause under which Wayne-Dalton agreed to add the developer as an additional insured on its insurance policies.  On December 7, 2009, Wayne-Dalton sold its Garage Door Division, and effectively ceased all operations.  While in business, however, Wayne-Dalton purchased numerous insurance policies; and chose deductible amounts of up to $500,000 per liability claim, "in order to reduce its premiums and to have more control over any claims or litigation which might be asserted against Wayne-Dalton."  (Complaint, ECF DKT 1-1, ¶10).

According to the Complaint, Travelers made representations and promises about claims handling procedures in order to induce Wayne-Dalton to purchase insurance from Travelers.  During negotiations, Wayne-Dalton expressed its concern over how tenders of defense and/or indemnification received from third parties would be handled.  (*Id.* at ¶15).  Consequently, "James R. Murphy, Esq., the Vice President of the Products and International Unit for Travelers, issued a letter dated June 30, 2003, to Wayne-Dalton setting forth the negotiated agreement between Wayne-Dalton and Travelers for the claim handling procedures for all general liability and product liability claims against Wayne-Dalton, which letter included the following:

>No Tender of Defense and/or Indemnification will be accepted unless approved by Mr. Boettler or Mr. Evans [Wayne-Dalton's corporate counsel]."

(*Id*. at ¶19 and ECF DKT #10-1).

Wayne-Dalton purchased a commercial general liability policy from Travelers, with a policy period of June 1, 2003 to June 1, 2004. (*Id*. at ¶17). This initial policy was renewed on three occasions. (*Id*. at ¶20). "The claims handling procedures as agreed to by Travelers and memorialized by Mr. Murphy in his letter dated June 30, 2003, were in full force and effect throughout the four year period of time that Travelers insured Wayne-Dalton." (*Id*. at ¶22). Beginning in 2002 or 2003, Wayne-Dalton started to receive construction defect claims asserted by California homeowners. In many of these cases, the developers demanded defense and coverage as additional insureds under the Wayne-Dalton policies. Wayne-Dalton's corporate counsel never approved acceptance of a tender for defense and/or indemnification. (*Id*. at ¶29). Also, for seven or eight years, Travelers complied with its express agreement not to accept such tenders without Wayne-Dalton's consent. *Id*. Allegedly, however, in October of 2011, Travelers began accepting the tenders for defense and/or indemnification asserted by the developers in the California construction defect lawsuits. (*Id*. at ¶30).

In 2012, Travelers allegedly invoiced Wayne-Dalton for legal fees and other costs, in excess of $1,000,000, paid to developers defending construction defect lawsuits in California. Wayne-Dalton has refused to pay those charges. (*Id*. at ¶37).

>As a result thereof, a dispute has arisen between Wayne-Dalton and Travelers over Travelers' acceptance of the additional insured tenders and/or who is responsible, if anyone, for the payment of such fees and expenses incurred in defending the developers in the construction defect lawsuits in California. (*Id*. at ¶39).

On June 27, 2013, counsel for Travelers sent a certified letter to HRH Door Corporation f/k/a Wayne-Dalton Corporation, demanding arbitration of the dispute over sums allegedly due and owing to Travelers "under general liability policies issued between 2003 and 2006 inclusive (the "Policies"), and under the "Agreement for Wayne-Dalton Corporation" dated June 8, 2006 (the "Program Agreement")."  (ECF DKT #6-5).  Section E of the General Conditions Section of the Program Agreement (ECF DKT #6-3 at 25) recites in part as follows:

> The parties recognize that disputes may arise between them, and in some instances involving non-parties as well, ***about the parties' rights and duties relative to payment of premium and other charges under this Agreement and the policies listed in the Policy Exhibit.***  The parties will attempt to resolve those disputes without resort to formal procedures.  However, in the event such a dispute is not resolved, either party shall submit the matter to arbitration and the other party shall be bound by such submission, provided that you shall not submit to arbitration any matter seeking to restrict our right to draw upon the Collateral or which would have the effect of restricting our right to draw upon the Collateral.
>
> ***Neither party shall submit to arbitration (1) any coverage disputes*** which arise under or in connection with claims or suits brought against the policies listed in the Policy Exhibit....  (Emphasis added).

On August 1, 2013, the within Complaint was filed in Cuyahoga County Common Pleas Court, and removed to U.S. District Court on September 9, 2013.  Wayne-Dalton asserts four claims for Declaratory Judgment; a claim for Breach of Contract; a claim for Bad Faith; and a claim captioned "Arbitration Clause Not Applicable."  On September 16, 2013, Travelers moved to dismiss the Complaint in favor of arbitration.  Alternatively, Travelers moved for partial dismissal for failure to state a claim and for failure to join indispensable parties.

## II. LAW AND ANALYSIS

**The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq*.**

The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). The FAA further mandates that when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. See *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "A central purpose of the FAA is 'to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 891 (Tex.2010) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4 (2003). The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel

arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 469 (1989).  The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Gilmer*, 500 U.S. at 26.

Once a court determines a suit is referable to arbitration under the terms of a written agreement, the matter shall be stayed "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3 (2003).

In determining whether to grant motions to dismiss or stay proceedings and compel arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000).

Wayne-Dalton does not contest that the parties did enter into an agreement to arbitrate certain disputes.  In addition, Wayne-Dalton has not raised any federal statutory claims requiring interpretation of Congressional intent.  The crux of Wayne-Dalton's disagreement is whether the arbitration provision in the Program Agreement applies to what it characterizes as a coverage dispute over past payments.

As a threshold matter, the Court determines whether or not an issue is within the scope of the parties' arbitration agreement.  *Stout*, 228 F.3d at 714.  "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship

at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio*, 340 F.3d at 395, citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir.1998).

In the express language of the Complaint, Wayne-Dalton summarizes the parties' dispute as one "over Travelers' acceptance of the additional insured tenders and/or who is responsible, if anyone, for the payment of such fees and expenses incurred in defending the developers in the construction defect lawsuits in California." (Complaint, ECF DKT #1-1 at ¶39). Repeatedly throughout its Complaint, Wayne-Dalton asserts that Travelers unilaterally reversed its position and paid legal fees and expenses of third-party developers, in contravention of the promises and representations memorialized in the June 30, 2003 letter entitled "Travelers Claim Handling Procedures." In the Program Agreement, Wayne-Dalton agreed to reimburse Travelers for sums paid within the deductible tier of the policies. (ECF DKT #6-3 and ECF DKT #6-5). In Section E of the Program Agreement, the parties agreed to arbitrate disputes "about the parties' rights and duties relative to payment of premium and other charges." (ECF DKT #6-3 at 25).

The Court finds that the disagreement over claims handling is discrete from coverages defined in the Travelers' policies. Wayne-Dalton is complaining about Travelers invoicing, for reimbursement, amounts paid for defense and indemnification of California developers in product defect lawsuits. The propriety of Travelers' accepting the developers' tenders without Wayne-Dalton's approval is independent of, and predominates over, policy coverage disputes. Therefore, the Court determines that the above-captioned matter is within the scope of the arbitration provision in the parties' Program Agreement. However, the Court disagrees

with Travelers, and declines to dismiss the Complaint.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #6) of Defendants, Travelers Property Casualty Company of America and The Travelers Indemnity Company ("Travelers"), to Dismiss in favor of arbitration, or, in the alternative, Dismiss the Sixth Cause of Action for failure to state a claim under Rule 12(b)(6), and the First, Second, Third, and Fourth Causes of Action pursuant to Rule 12(b)(7) for failure to join indispensable parties is granted in part only.  The Complaint of Plaintiff, HRH Door Corp., f/k/a Wayne-Dalton Corp. ("Wayne-Dalton"), shall be arbitrated in accordance with the parties' agreement.  Pursuant to 9 U.S.C. § 3, the within matter is stayed and removed from the Court's active docket until the arbitration is concluded.  The alternative Motions to Dismiss, under Fed.R.Civ.P. 12(b)(6) and 12(b)(7), are denied.  The parties shall submit joint status reports every sixty (60) days, starting from the date of this Order, until such time as the arbitration process is completed.

**IT IS SO ORDERED.**

                          **s/ Christopher A. Boyko**
                          **CHRISTOPHER A. BOYKO**
                          **United States District Judge**

**Dated:  November 8, 2013**